**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SANYA TARIQ, a minor, by her parents and next friend,<br>Mohammad and Shazra Tariq<br>4519 Winding Oak Drive<br>Olney, Maryland 20832<br><br>and<br><br>MOHAMMAD AND SHAZRA TARIQ<br>4519 Winding Oak Drive<br>Olney, Maryland 20832<br><br><br>Plaintiffs,<br><br>v.<br><br>JERRY D. WEAST (officially as),  Superintendent,<br>Montgomery County Public Schools,<br>850 Hungerford Drive,<br>Rockville, Maryland 20850,<br><br>and<br><br>MONTGOMERY COUNTY BOARD OF<br>EDUCATION,<br>850 Hungerford Drive,<br>Rockville, Maryland 20850,<br><br>Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br>Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1.      Sanya Tariq ("Sanya") is an eleven-year-old girl who resides in Montgomery

County with her parents Mohammad and Shazra Tariq ("the parents" or "the Tariqs").  Sanya and

-1-

her parents bring this action because of the failure of Montgomery County Public Schools ("MCPS") to provide Sanya the free appropriate public education ("FAPE") that is her right under the IDEA. After agreeing with her parents and recognizing that Sanya's significant disabilities require that she receive thirty hours of full-time, self-contained special education, the local IEP team referred Sanya's case to the Central IEP ("CIEP") team for consideration of a full-time and/or non-public school placement. However, less than two months later, at the CIEP meeting, the team reversed and abandoned the prior position, proposing instead that Sanya attend Farquhar Middle School ("Farquhar") with significantly less special education support – the very program that the previous local IEP team decided not to propose. The decision by the CIEP team was made without any new information, without the input of the parents, and with no real reason to support it. This sudden change in position and change to Sanya's IEP was an overt violation of this family's due process rights, and denial of FAPE to Sanya.

### Jurisdiction

2.      This Court has jurisdiction over this matter pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400-1461; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; 42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. This Court has pendent jurisdiction pursuant to MD. CODE ANN. EDUC. § 8-401, *et seq*. (1996). Plaintiffs have exhausted their administrative remedies and appeal to this Court from a decision of an Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings, MSDE-MONT-OT-08-19686 and MSDE-MONT-OT-08-23045 (October 27, 2008).

## Parties

3.      Sanya Tariq is a disabled student who has been coded as mentally retarded and is therefore eligible under the IDEA to receive special education services as a student with an educational disabilities.  At all times relevant to this action, Sanya resided in Montgomery County, Maryland.  Her parents bring this action on her behalf and in their own right.

4.      Jerry D. Weast is the Superintendent of MCPS and, as such, is the public official charged with the responsibility for ensuring that MCPS complies with federal law as to the education of disabled children.  He is sued in his official capacity.

5.      The Montgomery County Board of Education is a local educational agency as defined by 20 U.S.C. § 1401, and, as such, receives financial assistance from the United States Department of Education.  The Montgomery County Board of Education is responsible for complying with federal law with respect to the provision of a FAPE to each disabled child in Montgomery County.

## Factual Allegations

6.      Sanya was born on December 30, 1996, and lives with her family in Olney, Maryland.  Sanya is coded as a student with mental retardation.  Although Sanya performs well below average in all academic areas, she is friendly and enthusiastic and shows relative strength in her social skills.  Through her hard work and ability to stay on task, Sanya has the potential to make slow and steady progress in her education.

7.      Sanya was born prematurely and has experienced developmental delays.  She received Early Intervention services as an infant, and as a toddler was found eligible for special

education services from Montgomery County through the Preschool Education Program ("PEP").

8.      In 2001, Sanya entered Brooke Grove Elementary School ("Brooke Grove") as a kindergarten student who continued to be eligible for special education services as a student with a speech/language impairment.  While at Brooke Grove, she attended the School-Based Learning Center and received special education instruction in all major academic subjects, as well as speech/language therapy and Occupational Therapy.

9.      In 2006, MCPS changed Sanya's disability code from speech/language impaired to mental retardation in order to more comprehensively reflect her needs.  She completed fifth grade at Brooke Grove during the 2006-07 school year and was then ready to move on to sixth grade.  Fifth grade is the last grade offered at Brooke Grove.

10.      During her time at Brooke Grove, Sanya made minimal progress.  Throughout her six years at the school, her parents continuously raised concerns about her lack of progress with her teachers and service providers.

11.      In March 2007, in preparation of Sanya's transition out of Brooke Grove, the IEP team convened to discuss her progress and continued areas of need.  The team decided to complete additional testing and observations and to reconvene in May, 2007 to discuss the results and make recommendations for the 2007-08 school year.

12.      In February and March of 2007, Dr. Laura Solomon, a private educational consultant and evaluator, completed a diagnostic educational evaluation of Sanya and found that her academic scores were all below average.  Dr. Solomon made several recommendations for Sanya's education, including intensive instruction in all academic areas, and building functional

-4-

life skills.  Based on her needs, Dr. Solomon concluded that Sanya required a nonpublic school placement.

13.    The IEP team reconvened on May 15, 2007 at Brooke Grove.  Present at that meeting were: Patrick Devine, Special Education Supervisor; Linda McDaniel, Brooke Grove Principal; Cathy Angel, Special Educator; Rona Dixon, School Psychologist; Sabrina Finlay, Pupil Personnel Worker; Susan Stevens, Special Educator; Bob Zorr, General Educator; Anne Willis, Speech Language Therapist; Any Katzman, Occupational Therapist; John Hilly, Special Education Coordinator at Farquhar Middle School; Nicole Hooper, from Rosa Parks Middle School, the Tariqs, and Dr. Solomon.

14.    At that meeting, the team reviewed all available information regarding Sanya in order to make recommendations for the 2007-08 school year.  After agreeing on goals and objectives, the team determined that Sanya required thirty hours of self-contained special education every week to meet her needs.  Based on that decision, the team proposed that Sanya be removed from the general education environment for her entire school week.

15.    The IEP team specifically considered the Least Restrictive Environment mandate of the IDEA in reaching its decision, concluding that, "Sanya requires small group instruction in the FLS [functional life skills] curriculum in all areas."  Furthermore, the team concluded that, "This amount of removal from general education is very restrictive but the team felt that Sanya require it in order to progress with academic and functional skills."

16.    The majority of Sanya's mainstream teachers from the fifth grade recommended against mainstreaming her for any part of the school day.

17.     The team also considered and rejected mainstream classes for physical education and arts in which Sanya would receive special education support without removal from the mainstream.

18.     In considering the school placement that could implement this IEP, the team discussed possible options within Montgomery County.  Specifically, the team considered placing Sanya at Farquhar Middle School, but determined that Farquhar could not implement the IEP with thirty hours of self-contained special education and therefore could not provide Sanya with an appropriate education.  Accordingly, the team referred Sanya's case to the Central IEP ("CIEP") team for consideration of a different placement.

19.     As justification for this proposal, several MCPS team members shared the parents' concerns about Sanya participating in a general education environment.  Specifically, Ms. McDaniel and Mr. Zorr agreed that Sanya's naivety and overly friendly personality could place her in dangerous situations and that it would be difficult to keep her safe in the larger school environment.  They also agreed that it would be difficult for Sanya to "keep up" socially with the other middle school students at a school like Farquhar due to her weaknesses in auditory processing and expressive language.  In addition, the team discussed concerns regarding the transitions that Sanya would be required to make in the larger middle school setting.

20.     Farquhar does not provide thirty hours of self-contained special education.

21.     Nobody on the IEP team expressed their dissent or disagreement with the decision to refer the case to the CIEP team.

22.     At the end of the meeting, nobody expressed their dissent or disagreement with the recommended thirty hours of full-time, self-contained special education.

-6-

23.     In early May, 2007, the parents submitted an application for Sanya to attend the Ivymount School ("Ivymount") a private special education school. Sanya was accepted at Ivymount on May 30, 2007.

24.     On July 9, 2007, the CIEP team convened. The only MCPS representative present at the meeting with any personal knowledge of Sanya was Ms. Angel. Mr. Hilly and Mr. Devine, who had both attended the May 15th IEP meeting, were also at the CIEP meeting to represent the local IEP team. Dr. Solomon and the parents attended the meeting along with the rest of the CIEP team.

25.     At the outset and before any substantive discussion, the team made it clear that it was making a significant change to the amount of, and type of special education services, it was proposing for Sanya. The team claimed that its decision to make these changes was due to new information, namely the ability of Farquhar to provide adaptive physical education and supportive mainstreaming in many subject areas.

26.     Farquhar has been providing adaptive physical education and supported mainstreaming to students with special education needs for at least nine years and the local IEP was aware of this information at the May 15, 2007 IEP meeting.

27.     The CIEP team significantly reduced the number of hours that Sanya would receive self-contained special education from thirty to twenty-two-and-a-half hours. Nobody on the team explained to the parents why Sanya needed less special education in July than she needed in May or specifically how the special education services would be delivered in the supported mainstream environment.

28.     The CIEP team proposed that Sanya receive twenty-two-and-a-half hours of special education out of the general education environment, three-and-one-quarter hours of special education in the general education environment, in addition to her speech and language and Occupational Therapy services.

29.     This proposal left time during each week that Sanya would be in the mainstream environment without any special education support.  The CIEP team proposed that this time would be during lunch.

30.     The team proposed that Sanya attend Farquhar Middle School, the same program that the May 15, 2007 IEP had deemed inappropriate to meet her needs.

31.     The parents were not made aware of any of these changes in the team's recommendation prior to the CIEP meeting.

32.     MCPS changed its position regarding Sanya's placement based on prviate conversations between MCPS staff before the CIEP meeting that were never divulged or discussed with the parents.

33.     The CIEP team predetermined the placement of Farquhar and then reduced Sanya's amount of special education service in order to fit that placement.

34.     The parents were not permitted to be part of the decision-making process for their daughter's education.

35.     The parents objected to the team's proposal and stated their intent to place Sanya at Ivymount and to seek public funding for that placement.

36.     Dr. Solomon observed the proposed program at Farquhar and found it to be inappropriate to meet Sanya's needs.  Specifically, she found that the other students' behaviors

-8-

would be distracting to Sanya and that the lack of differentiation of instruction would inhibit her ability to make progress.  Dr. Solomon also found the program at Farquhar to be less intensive than the previous program at Brooke Grove, where Sanya failed to make adequate progress.  Dr. Solomon's observations confirmed her previous concerns about Sanya attending school in a large, middle school environment.

37.    Sanya attended Ivymount School for the 2007–08 school year where she made significant educational progress.

38.    Ivymount is a proper placement for Sanya.

39.    On May 21, 2008, Sanya's parents filed a Due Process Hearing Request appealing the decision of the CIEP team and alleging procedural and substantive violations of the IDEA.

40.    A due process hearing was convened on September 9, 2008, and continued on September 10, 11, 12, and 26, 2008.  At the hearing, the parents presented testimony and evidence to support their claim that MCPS denied Sanya a FAPE both procedurally and substantively by drastically reducing her special education services and placing her at Farquhar after the local IEP team found otherwise, and without the input of the parents or those who had personal knowledge of Sanya.

41.    MCPs witnesses testified directly contrary to their own written notes of the local IEP deliberations.

42.    MCPS witnesses testified under oath that some MCPS staff at the local IEP meeting concluded that Sanya could not be mainstreamed, but could not under oath identify a single such person.

43.    MCPS witnesses under oath could not explain why meeting notes of the local IEP meeting that were described as capturing the important points of the meeting did not reflect the opinion of any MCPS witnesses who supposedly disagreed with the full-time special education proposal in the IEP.

44.    No MCPS witnesses under oath could explain why the specific team explanation for full-time special education on the IEP was written if it actually did not reflect the consensus of the IEP team.

45.    On October 27, 2008, ALJ Carlis issued his decision and found that MCPS had not committed procedural violations during the development of Sanya's IEP for the 2007-08 school year. He further found that her IEP was reasonably calculated to provide her with some educational benefit.

46.    This decision contains palpable errors of fact and law, and is incorrect in failing to recognize that MCPS committed procedural violations which denied Sanya a FAPE, denied the Tariqs from meaningful participation in the IEP and placement decision process, and produced an IEP and proposed placement that were inappropriate.

47.    The ALJ improperly disregarded the testimonial and written expert opinions of the witnesses who know Sanya, regarding her needs.

48.    The ALJ ignored the plethora of glaring inconsistencies in the MCPS witnesses' testimony.

49.    Plaintiffs are aggrieved by the decision of the ALJ.

50.    Plaintiffs have exhausted their administrative remedies.

## COUNT I

51.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 50.

52.     Defendants' failure to provide Sanya with a free appropriate public education violates plaintiffs' rights under the IDEA, Section 504, Section 1983, and Maryland law.

## COUNT II

53.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 50.

54.     The failure of the ALJ to order defendants to place and fund Sanya at Ivymount violates the IDEA and Maryland Law.

## COUNT III

55.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 50.

56.     The failure of defendants to provide plaintiffs with adequate due process procedures violates the IDEA, Section 504, Section 1983, and Maryland law.

## COUNT IV

57.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 50.

58.     The ALJ committed error, and violated plaintiffs' due process rights under the IDEA and Maryland law, by failing to render a proper decision on all issues presented by the plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1.   Issue judgment for plaintiffs and against defendants;

2.   Issue declaratory relief that defendants violated plaintiffs' rights under applicable law;

3.   Issue injunctive relief ordering defendants to reimburse plaintiffs for the tuition expenses and costs incurred in enrolling Sanya Tariq at the Ivymount School for the 2007-08 school year, while declaring Ivymount to be Sanya's current educational placement under the IDEA;

4.   Order defendants to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

5.   Award any other relief that this Court deems just.


Respectfully Submitted,


Michael J. Eig          #07718
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Plaintiffs